It follows that the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur, except O'BRIEN, J., who dissents.

O'BRIEN, J. (dissenting). Mr. Justice INGRAHAM fully states the facts, but I am unable to agree with his conclusion. While the action was pending in the supreme court to recover on the $2,500 note, the mortgage was made which, in addition to the payment of the $2,500, provided that the mortgagors should also pay "all the costs and expenses incurred" by the bank in that action. Construing the language employed and the intention of the parties, I think that what the mortgagors contracted to do was to save the bank harmless for "all costs and expenses," in connection with the pending action. The incurring of a legitimate expense by the bank for counsel fee was proper, and within the contemplation of the parties under the agreement. The bank having had the right originally to employ counsel in the suit, and to contract to pay a reasonable fee for their services, which it appears it did, has the right to collect the same from the mortgagors. The only question, therefore, it seems to me, that arises in this case is whether the sum charged for counsel fees is reasonable. I think enough appears to show that $150 is an excessive charge, and that $50 would be ample, in addition to the taxable costs. The mortgage being so conditioned that the payment of such a sum could be enforced, the judgment should be accordingly modified, and, as so modified, affirmed, without costs.

---

(77 App. Div. 131.)

### TYRREL v. EMIGRANT INDUSTRIAL SAV. BANK.

(Supreme Court, Appellate Division, First Department. December 5, 1902.)

1. GIFTS—CONDITIONS—DELIVERY.
    Where in an action to recover an alleged gift of money in bank inter vivos, there was evidence that the gift was conditional, a requested instruction that if the donor, at the time of the alleged gift, said that plaintiff was to have the money "if anything happened to him" (the donor), the jury should find for defendant, was improperly refused.

2. SAME—EVIDENCE.
    Plaintiff testified that S., the owner of a bank deposit, being an inebriate, delivered the bank book to him, saying that the money was a curse to him, that he could never keep sober so long as he had it, and that plaintiff should take it and keep it; that he gave him the money, saying, "It is yours to keep." Plaintiff's testimony was corroborated by his son and C., but C. testified that the donor said that whatever was in the bank was plaintiff's if anything happened to the donor. Plaintiff made no claim on the deposit for seven years, during which the donor had disappeared, and, in supplementary proceedings, plaintiff had testified that he owned no money in bank. *Held*, that a verdict finding a valid gift of the deposit was against the weight of evidence.

Appeal from trial term, New York county.

Action by Daniel Tyrrel against the Emigrant Industrial Savings Bank. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

¶ 1. See Gifts, vol. 24, Cent. Dig. §§ 68, 69.

79 N.Y.S.—4

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Richard O'Gorman, for appellant.
Theodore Prince, for respondent.

INGRAHAM, J. The action was brought to recover from the defendant, a savings bank, a sum of money deposited with the defendant by one John Sweeny. The complaint alleges that "on the 31st day of October, 1891, in consideration of certain moneys given by plaintiff to said John Sweeny, and of his then indebtedness to and friendship for plaintiff, he, said John Sweeny, made to plaintiff a gift of the said money then on deposit, being a portion of the money so deposited by them in said bank, and at the same time delivered to plaintiff the said bank or pass book, No. 272,115, as evidence of said gift, which gift plaintiff accepted, and which book plaintiff has ever since continuously held and kept, and still has, holds, and keeps, as evidence of the gift and money aforesaid;" and the complaint demands judgment against the defendant for the balance due on said deposit. Upon the trial the plaintiff was called as a witness, and testified that Sweeny, the depositor, obtained from the government a pension, and received at that time a sum of money for arrears of pension, which he deposited in two savings banks, one of which was the defendant; that Sweeny came to the plaintiff on the 31st day of October, 1891, borrowed $10, went out with the plaintiff's son and one Clark to get a drink, and came back to the plaintiff and said:

"'That money is a curse to me. I never can keep sober as long as I have it. You keep it. * * * Take it and keep it.' * * * He said, the time he gave me that book, the money in it was mine,—'Yours to keep.' I took the books and put them in a drawer of my desk, and says, 'Thank you, doctor.'"

He further testified to a previous conversation with Sweeny, who said that, "if anything ever happens to him, he wanted me to have the money; that I had always been his friend, and he had no one else to give it to." Upon cross-examination the plaintiff testified that the conversation between himself and Sweeny was as follows:

"He came in my office and says: 'Here, boss; here is my two bank books. As long as I have got them and I can draw money, I never can keep sober. Take it. That money is yours. I don't want it. It is only a curse to me.' He said he would try live off his pension. He said I had always been a good friend to him, and the only friend he did have."

A few days after, Sweeny disappeared, and had never been heard from since. That for seven years he made no claim upon the bank for the money. That in November, 1895, in proceedings against him as a judgment debtor, he testified:

"I keep no bank account. The last time I had a bank account was in 1867. I kept an account in the Ninth National Bank, in the city of New York. I discontinued it about in 1868. I have no savings-bank account."

The plaintiff's son was also called as a witness, and testified that he was present at this conversation; that, after the plaintiff loaned Sweeny $10, he, Sweeny, Unger, and Clark went to a saloon and had a drink; that they returned to the plaintiff's place of business, and

Sweeny pulled out two bank books and said: "Boss, here is two bank books. That money in the bank belongs to you. I want to give it to you. This money has been an absolute curse to me,"—and that he handed the bank books to the plaintiff. Clark was called as a witness, and testified that he was present at that interview; that when they returned from the saloon he saw Sweeny take two bank books out of his pocket and hand them to the plaintiff, saying:

"Here, use these two bank books that have been a curse to me ever since I have had them, for I cannot keep sober, and, whatever is in the banks, these books is yours if anything happens to me."

The witness also testified that Sweeny had before made several statements to him, saying that, if anything happened to him, he wanted the plaintiff to have everything in the banks.

The case was tried in April, 1902, and these witnesses testified to a conversation between the plaintiff and Sweeny over 10 years prior to the trial. The defendants offered no testimony, and the court submitted the question to the jury as to whether there was a bona fide gift. After the court had charged the jury, counsel for the defendant requested the court to charge that if Sweeny, at the time of the alleged gift, said that Tyrrel was to have the money if anything happened to him, the jury should find for the defendant. This request the court declined, to which the defendant excepted, the court saying:

"It is for the jury here to say whether there was a present gift, under which the dominion and control of this property was intended to be transferred from John Sweeny to Daniel Tyrrel, the plaintiff in this action."

I think the refusal to charge this request was error which requires a reversal of the judgment. The rule is elementary that, "to establish a valid gift, a delivery of the subject of the gift to the donee, or to some person for him, so as to devest the possession and title of the donor, must be shown." Young v. Young, 80 N. Y. 430, 36 Am. Rep. 634. "An absolute gift requires a renunciation by the donor, and an acquisition by the donee, of all interest in and title to the subject of the gift. A portion cannot be retained, and the remainder disposed of." Curry v. Powers, 70 N. Y. 217, 26 Am. Rep. 577. Here Clark, one of the witnesses to the transaction, swore that Sweeny, delivering these bank books to the plaintiff, said:

"Here, use these two bank books, that have been a curse to me ever since I have had them, for I cannot keep sober; and, whatever is in the banks, these books is yours, if anything happens to me."

If this was the transaction and the surrounding circumstances,—and the condition of the parties strongly tends to corroborate it,—it is clear that there was no absolute gift of the money in the bank, but the intention was for the plaintiff to keep the bank books, so that, in the event of Sweeny's death, he would be entitled to the moneys represented by them. There would be, therefore, no present intention to part with the absolute title to the money represented by the bank books, necessary to make a valid gift. To the money represented by these bank books the plaintiff, concededly, had no title. It belonged to Sweeny. To sustain this action, there must be convincing proof that what Sweeny intended at the time he delivered the bank

books to the plaintiff was that the absolute title to the money on deposit should vest in the plaintiff, and that Sweeny intended to, and did, part with all dominion and title to it by a transfer of it to the plaintiff. If his intention was to give these books in the plaintiff's keeping, so that upon his death what was left in the bank should be the property of the plaintiff, there was not a valid gift, that would entitle the plaintiff to recover; and I think the defendant was entitled to have the jury instructed that, if that was the intention of Sweeny at the time of the delivery of the bank books, the defendant was entitled to a verdict. I am also of the opinion that upon this testimony the verdict is against the weight of evidence. The gift depends upon a conversation happening over 10 years before the trial, of which no record was kept. Sweeny was evidently quite dissipated, and was rapidly using up this money in dissipation. The plaintiff had tried to induce him not to draw the money from the bank, but to live upon his pension. He stated at the time he delivered the books to the plaintiff that that was his intention, and then he characterized the delivery as a gift of the bank books. It is quite easy to see that a slight change in the words used would have materially changed the evidence of Sweeny's intention. The probabilities are against his intending absolutely to part with the title to the money, and the plaintiff and his son, who testified as to these words, were interested witnesses. Then the conduct of the plaintiff after this transaction, and after Sweeny's disappearance, in failing for upwards of seven years to make any claim upon the bank for the money, and in testifying positively that he had no savings bank accounts, in supplementary proceedings, is strong, if not conclusive, evidence that he did not understand that Sweeny, by this transaction, had intended to transfer an absolute title to this money to him. If Clark's version of the transaction is true, this would account for Sweeny's failure to press his demand for the money, as he could justly testify he was not the absolute owner of these bank books until Sweeny's death had been established. I do not think that we have here such clear and convincing testimony as to justify the jury in finding that Sweeny intended to devest himself of this money and vest it in the plaintiff.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.